STATE of Minnesota, by Irene GOMEZ–
BETHKE, Commissioner, Department
of Human Rights, Relator,

v.

EASTERN AIR LINES, INC.,
Respondent.

No. C4–83–1750.

Court of Appeals of Minnesota.

March 21, 1984.

Hubert H. Humphrey, III, Atty. Gen., Elizabeth Cutter, Sp. Asst. Atty. Gen., St. Paul, for relator.

Susan Goodnature, Minneapolis, Ella K. Solomons, Dept. of Legal Affairs, Miami, Fla., for respondent.

Heard, considered and decided by POPO-VICH, C.J., and PARKER and LANSING, JJ.

## OPINION

POPOVICH, Chief Judge.

Relator appeals from an order refusing to reconsider the dismissal of a marital status discrimination action. The hearing examiner dismissed the action holding that respondent was substantially prejudiced by relator's failure to provide prompt notice of the marital discrimination charge. Relator claims the hearing examiner's finding of substantial prejudice was not supported by the record. Regardless of whether the finding of substantial prejudice is upheld, relator claims dismissal was inappropriate. We affirm.

### FACTS

Gail Fisher was employed by Eastern Air Lines as an agent from January 8, 1968, until September 30, 1978. She worked at Logan International Airport (L.I.A.) in Boston from 1976, to March 31, 1978. Her husband also worked for Eastern and was employed at L.I.A. before and during the time she worked there.

In March 1978, her husband voluntarily transferred to Minneapolis-St. Paul International Airport (M.St.P.I.A.). She also requested a transfer to M.St.P.I.A. She was informed the transfer would not be granted because Eastern had a no-relative policy forbidding relatives from working for the same manager. At M.St.P.I.A., all Eastern agents reported to the same manager because the operations were smaller than at the Logan and other airports.

Eastern also employs ticket agents at two city offices in Minneapolis and St.

Paul. Since the employees in those offices do not report to the same manager as the employees at the airport, she would have been eligible for a position in either of those offices had an opening arisen. She had the option of continuing her employment at L.I.A. in Boston until an opening became available in one of the Minneapolis-St. Paul city offices. On March 3, 1978, Fisher requested a leave of absence to commence March 31, 1978, and end September 30, 1978.

A full-time agent position at the M.St.P. I.A. opened July 12, 1978. Fisher would have been eligible for that position, except for Eastern's no relative policy.

On August 11, 1978, Fisher wrote the Minnesota Department of Human Rights a letter describing the facts which would later form the basis for her allegations of marital status discrimination. On September 30, 1978, her employment was terminated when her leave of absence expired.

On March 9, 1979, the department received an affidavit from Fisher describing the circumstances of her departure from Eastern. She filed a formal charge of marital status discrimination with the department on April 2, 1979. Eastern received notice of the charges from the department on April 5, 1979.

Initial conciliation discussions were held in 1979. No settlement was reached. The department did not contact Eastern again until 1982, three years after the initial conference. By 1983, Fisher's accumulated back pay was approximately $100,000. The department offered no excuse or explanation for the series of delays occurring in this case.

On May 25, 1983, respondent moved to dismiss Fisher's charge and the complaint on the grounds that Fisher's verified charge was filed 13 months after the date of the alleged discriminatory act. Minn. Stat. § 363.06, subd. 3 (1978) required that a charge be filed within six months of the discriminatory practice. Respondent's motion was based on the fact that the discriminatory practice occurred March 3, 1978,

and Eastern did not receive notice of the charge until April 5, 1979.

Relator claimed the charge was timely, asserting Fisher's August 11, 1978 letter was the charge. The hearing examiner requested briefs on whether the August 11, 1978 letter could be considered a charge under Minn.Stat. § 363.06 (1978). The statute called for a "verified" charge; the August 11 letter was not verified. After substantial briefing, the hearing examiner held the August 11 letter was effective as a verified charge under Minn.Stat. § 363.06 and applicable case law. Nevertheless, the hearing examiner found that respondent was substantially prejudiced by the department's eight month delay in serving notice of the charge and ordered the charge and complaint dismissed.

## ISSUE

Does the evidence support the hearing examiner's dismissal and finding that respondent was substantially prejudiced by the relator's service of notice eight months after the five day limit established by Minn.Stat. § 363.06, subd. 1 (1978)? ·

## ANALYSIS

█ Review of a hearing examiner's decision is governed by Minn.Stat. § 14.69 (1982), which allows modification or reversal of a hearing examiner's order if it is:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

*Id.* The factual findings of a hearing examiner will not be set aside unless they are without support in the record. *See Taylor v. Beltrami Electric Cooperative, Inc.,* 319 N.W.2d 52, 56 (Minn.1982); *Dakota County Abstract Co. v. Richardson,* 312 Mn. 353, 252 N.W.2d 124, 126–27 (Minn.1977).

The test for determining whether a specific finding is supported by substantial evidence was set out in *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 (Minn.1977). The *Herbst* definition states:

> We view that by the 'substantial evidence' test is meant: 1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) more than a scintilla of evidence; 3) more than 'some evidence'; 4) more than 'any evidence'; and 5) evidence considered in its entirety. There are correlative rules or principles that must be recognized by a reviewing court, such as 1) unless manifestly unjust, inferences must be accepted even though it may appear that contrary inferences would be better supported; 2) a substantial judicial deference to the fact-finding processes of the administrative agency; and 3) the burden is upon the appellant to establish that the findings of the agency are not supported by the evidence in the record, considered in its entirety.

*Id.*

■ 1. In *Equal Employment Opportunity Comm'n v. AirGuide Corp.,* 29 Fair Empl.Prac.Cas. (BNA) 236 (S.D.Fla. 1978), the court held the respondent was substantially prejudiced by a ten month delay in providing notice of a discrimination charge. The *AirGuide* court found that accumulated back pay of $3,900 hindered conciliation discussions and thereby substantially prejudiced the respondent. *Id.* at 239, 242. In this matter, the evidence supports the hearing examiner's finding that Eastern's interests were substantially prejudiced by relator's failure to provide timely notice. The department's notice did not comply with Minn.Stat. § 363.06, subd. 1 (1978) which states:

> "The commissioner within five days of such filing shall serve a copy of the charge upon the respondent personally or by registered or certified mail." [1]

Had Respondent received timely notice of the charge, it could have placed Fisher in a position that was open in August 1978.[2] Likewise, any liability that would have arisen for back pay would have been minimal. Instead, the department waited eight months before serving the notice that Minn.Stat. § 363.06, subd. 1 (1978) requires to be made within five days. During that eight month period, accumulated back pay of approximately $11,000 accrued. This large amount of back pay was an obstacle in settlement negotiations and effectively deprived respondent of its right to conciliate.

The finding that respondent was substantially prejudiced by untimely notice of Fisher's charge is amply supported in the record.

2. Review of the hearing examiner's decision to dismiss is subject to the same considerations discussed above. The examiner's decision to dismiss may not be overturned unless it falls within one of the Minn.Stat. § 14.69 (1982) categories.

---

**1.** We believe that the hearing examiner correctly applied principles of equitable tolling in this case and that Minn.Stat. § 363.06, subd. 3 is not jurisdictional in nature. Minn.Stat. § 363.06, subd. 4 (time for filing claim) has been held jurisdictional. *Minnesota Mining & Mfg. Co. v. State,* 289 N.W.2d 396, 401 (Minn.1979). The viability of that interpretation is questionable because the United States Supreme Court held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite * * *, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling," *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Because Minnesota courts apply federal case law when interpreting chapter 363, *Danz v. Jones,* 263 N.W.2d 395, 398–99 (Minn.1978), we are hesitant to extend the *Minnesota Mining* decision under these circumstances. Moreover, interpreting the five day notice requirement as jurisdictional would create substantial due process and equal protection issues. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428–33, 102 S.Ct. 1148, 1153–56, 71 L.Ed.2d 265 (1982).

**2.** The department is required to "make an immediate inquiry when necessary to prevent a charging party from suffering irreparable loss in the absence of immediate action." Minn. Stat. § 363.06, subd. 4 (1978). Had the department complied with its mandate, Fisher might have been placed in this position before her leave of absence expired.

The hearing examiner held that, under the circumstances, the finding of substantial prejudice to Eastern required dismissal of the charge and complaint with prejudice. The general rule regarding untimely notice of a discrimination charge was stated in *Equal Employment Opportunity Comm'n v. Burlington Northern, Inc.,* 644 F.2d 717 (8th Cir.1981). The *Burlington* court said, "failure of timely notice may preclude an EEOC action if either willfulness or bad faith on the part of the agency or substantial prejudice to the employer is shown." *Id.* at 721.

Describing the effects of a ten month delay in providing notice of a discrimination charge, the *AirGuide* court stated:

[T]he EEOC by its delay had caused Air-Guide to be in the position of having to pay a substantial back pay claim of questionable validity or face expenditure of ten [sic] of thousands of dollars to defend itself on principle. This deprivation of choice as a result of the lack of timely notice of the charge of discrimination is substantial prejudice and affects all aspects of the case since had settlement been reached with the charging party for ten days pay or by hiring her in the period shortly after October 24, 1972, no suit would have occurred.

29 Fair Empl.Prac.Cas. (BNA) at 242.

Relator claims dismissal was inappropriate because a suit could proceed with a limit on the recoverable damages. Under relator's theory, damages accrued during the eight month delay would not be allowed.

This argument is untenable and ignores the facts. Limiting damages would not rectify the prejudice caused by the department's failure to provide adequate notice. The accrual of back pay during the eight month period was one of the major obstacles in the settlement discussions. Fisher might have been placed in a position had Eastern received timely notice. Relator's claims to the contrary are completely speculative.

Relator ignores the department's failure to contact Eastern for approximately three years after initial settlement discussions failed in 1979. During this time, back pay of approximately $100,000 has accumulated. This effect of the department's untimely notice would not be ameliorated by Relator's theory for limiting damages.

## DECISION

The hearing examiner's order denying the motion for reconsideration and other relief is affirmed. The record supports the finding that respondent was substantially prejudiced by the department's failure to provide timely notice of Fisher's charge. Although dismissal is severe, no other action would protect respondent from the substantial prejudice caused by relator's untimely notice. We affirm.